In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-1564

SHLOMO LEIBOVITCH, et al.,

*Plaintiffs-Appellants,*

*v.*

ISLAMIC REPUBLIC OF IRAN, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:08-cv-01939—**William T. Hart**, *Judge.*

SUBMITTED SEPTEMBER 12, 2011—DECIDED SEPTEMBER 25, 2012

Before BAUER, ROVNER, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* The Leibovitch family was attacked by terrorists while driving along a highway in Israel. One child, an Israeli national, died in the attack while a second child, a United States citizen, was seriously injured. The family brought suit in federal district court against the Islamic Republic of Iran and the Iranian Ministry of Information and Security under the terrorism exception of the Foreign Sovereign Immunities Act,

28 U.S.C. § 1605A, for providing material support and resources to the organization that carried out the attacks. The district court adjudicated the claim for injuries sustained by the United States citizen child. But the trial court found no jurisdiction over intentional infliction of emotional distress claims brought by her other family members on the grounds that they are not United States citizens. Because we conclude that the Foreign Sovereign Immunities Act confers subject-matter jurisdiction over the emotional distress claims brought by the Leibovitchs under Israeli law, we reverse and remand.

## I. BACKGROUND

On June 17, 2003, several members of the Leibovitch family were traveling along the Trans-Israel highway near the town of Kalkilya through an area bordering the West Bank. Agents of the Palestine Islamic Jihad ("PIJ") crossed from the West Bank into Israel and fired upon the Leibovitchs' minivan using pistols and a Kalishnikov rifle. The Leibovitchs' seven-year-old child, N.L., an Israeli national, was killed by the gunshots. Her three-year-old sister, S.L., an American citizen, survived but was severely injured by bullets that shattered bones in her right wrist and pierced her torso. Two of the girls' grandparents and two siblings were also in the van during the attack. They survived but witnessed N.L.'s horrifying death as well as the grave injuries inflicted upon S.L.

On April 3, 2008, the Leibovitchs brought suit against the Islamic Republic of Iran and its Ministry of Informa-

tion and Security (collectively "Iran"). The complaint sought damages on behalf of each family member in the van as well as N.L. and S.L.'s parents, none of whom were United States citizens.

The trial court entered a default order against Iran after the defendants received service of process via diplomatic channels but failed to respond or enter an appearance. After reviewing expert testimony and documentary evidence from the plaintiffs, the district court determined that S.L. was injured in "an act of . . . extrajudicial killing" under the FSIA exception for terrorism, §1605A(a)(1). The district court further found that Iran was vicariously liable for the PIJ's terrorist attack because Iran had openly provided material support and resources for the PIJ's campaign of extrajudicial killings. Finally, the district court calculated $17.5 million in compensatory damages for S.L.'s post-traumatic stress, loss of solatium from her sister's death, and permanent disability and disfigurement resulting from the attack. An additional $35 million was awarded to S.L. in punitive damages.

However, the district court dismissed all claims raised by the other members of the Leibovitch family for lack of subject-matter jurisdiction. After a motion for reconsideration, the trial court still concluded that it did not have subject-matter jurisdiction and further suggested that even if it did, the court was not persuaded that Israeli law would permit the plaintiffs to recover for intentional infliction of emotional distress. The Leibovitchs appeal. Though they concede that the district court was correct to find no jurisdiction over

certain counts in the complaint, the family contends that there is subject-matter jurisdiction over claims brought by family members under Israeli law for intentional infliction of emotional distress arising from S.L.'s injury. Iran has not made an appearance or filed any briefs in this case.

## II. ANALYSIS

This action is brought against Iran pursuant to the state-sponsored terrorism exception to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A (2008). The FSIA provides the sole basis for asserting jurisdiction over foreign nations in United States courts. *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989). Foreign states enjoy immunity under the FSIA in all cases that do not fall into one of the statute's specifically enumerated exceptions. *Id.* at 439; *Enahoro v. Abubakar*, 408 F.3d 877, 881 (7th Cir. 2005).

### A. Historical Background of FSIA State-Sponsored Terrorism Exception

The exception to foreign sovereign immunity presented in this case has a convoluted history. Congress and the federal courts have engaged in an extended dialogue over the scope and appropriate interpretation of this statutory provision. Most relevant to our analysis of subject-matter jurisdiction are: 1) the initial version of the terrorism exception adopted in 1996, 2) the Flatow Amendment passed later in 1996, 3) the D.C. Circuit's

decision in *Cicippio-Puleo v. Islamic Republic of Iran*, 353 F.3d 1024 (2004), and 4) Congress's 2008 abrogation of *Cicippio-Puleo* and enactment of a revised, reconsolidated terrorism exception codified in § 1605A.

### 1. Original Terrorism Exception

Congress amended the FSIA as part of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") to add a new exception for state sponsorship of certain acts of terrorism. Pub. L. No. 104-132, § 221(a), 110 Stat. 1214 (formerly codified at 28 U.S.C. § 1605(a)(7) (repealed 2008)). This exception eliminated sovereign immunity and permitted suit directly against a foreign state "for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources . . . for such an act . . . ." § 1605(a)(7). One of the explicit purposes of AEDPA was to "deter terrorism" directed at United States citizens and supported by foreign sovereigns as well as to "provide justice" for victims of terrorist acts. 110 Stat. at 1214; s*ee also Republic of Iraq v. Beaty*, 556 U.S. 848, 859 (2009) (Section 1605(a)(7) "was intended as a sanction, to punish and deter undesirable conduct.")

For the terrorism exception to be invoked, a nexus to the death or injury of a United States citizen was required. Sovereign immunity would still apply and bar suits against a foreign state if "neither the claimant nor the victim was a national of the United States." § 1605(a)(7)(B)(ii).

The 1996 version of the terrorism exception codified in § 1605(a)(7) has been understood as a jurisdiction-conferring amendment, consistent with the overarching framework of the FSIA. But the language of § 1605(a)(7) left unresolved whether Congress intended to create a federal private right of action under the newly enacted exception. *See Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 87 (D.C. Cir. 2002) ("The FSIA is undoubtedly a jurisdictional statute which, in specified cases, eliminates foreign sovereign immunity . . . . There is a question, however, whether the FSIA creates a federal cause of action . . . against foreign states." (citations omitted)).

An underlying presumption of the FSIA is that an exception to sovereign immunity does *not* create a private right of action against a defendant whose conduct falls within a delineated exception. Section 1606 of the FSIA provides: "As to any claim for relief with respect to which a foreign state is not entitled to immunity . . ., the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances." The Supreme Court has interpreted § 1606 to mean that the FSIA does not, as a general matter, provide a substantive source of liability against a foreign state. *See First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 620 (1983) ("The language and history of the FSIA clearly establish that the Act was not intended to affect the substantive law determining the liability of a foreign state or instrumentality, or the attribution of liability among instrumentalities of a foreign state."). In the

absence of a substantive source of law from the statute, plaintiffs have typically been required to bring suit using causes of action based on underlying state or foreign law when an exception to sovereign immunity applies. *Id.* at 621-23

An FSIA plaintiff's reliance on a cause of action found in state tort law has been referred to as the "pass-through" approach. *See Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 12 (2d Cir. 1996) ("the FSIA . . . operates as a 'pass-through' to state law principles." (quoting *Zicherman v. Korean Air Lines Co.*, 516 U.S. 217, 229 (1996))). Choice of law rules typically determine the source of law for the appropriate action, often based upon the plaintiff's domicile or the location of the injury. *See id.*

### 2. The Flatow Amendment Ensured Punitive Damages Against Officials and Agents of State-Sponsored Terrorism.

Though § 1605(a)(7) established a jurisdictional framework for claims arising from terrorist acts, Congress began to turn its attention to the practical needs of plaintiffs pursuing suits under this section. Five months after AEDPA's enactment, Congressman Jim Saxton sponsored an amendment to § 1605(a)(7) creating a federal cause of action for plaintiffs against agents and officers of states that sponsor terrorism. The new provision was enacted on September 30, 1996 as part of the 1997 Omnibus Consolidated Appropriations Act. Pub. L. No. 104-208, § 589, 110 Stat. 3009-172 (1996) (formerly codified

at 28 U.S.C. § 1605 note (repealed 2008)). The law became known as the Flatow Amendment after Alisa Flatow, a Brandeis University student mortally wounded in a suicide bombing attack in the Gaza Strip.[1]

Congress's principal goal in adopting the Flatow Amendment appears to have been to ensure the availability of punitive damages against agents of state sponsors

---

[1] Alisa Flatow's father, Stephen Flatow, successfully lobbied Congress for an express, federal private right of action with the option for punitive damages against agents and officers of state sponsors of terrorism. *See In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d 31, 43 (D.D.C. 2009) (discussing legislative history and lobbying efforts of Flatow family); *see also* Richard T. Micco, *Putting the Terrorist-Sponsoring State in the Dock: Recent Changes in the Foreign Sovereign Immunities Act and the Individual's Recourse Against Foreign Powers*, 14 Temp. Int'l & Comp. L.J. 109, 110 n.7 (2000). The Flatow Amendment provided:

> (a) An official, employee, or agent of a foreign state designated as a state sponsor of terrorism . . . while acting within the scope of his or her office, employment, or agency shall be liable to a United States national or the national's legal representative for personal injury or death caused by acts of that official, employee, or agent for which the courts of the United States may maintain jurisdiction under section 1605(a)(7) . . . for money damages which may include economic damages, solatium, pain, and suffering, and punitive damages if the acts were among those described in section 1605(a)(7).

28 U.S.C. § 1605 note.

of terrorism. Section 1606 of the FSIA prohibits punitive damages from being awarded directly against a foreign state. *See id.* ("a foreign state except for an agency or instrumentality thereof shall not be liable for punitive damages . . ."). Because the pass-through approach requires plaintiffs to rely on a state cause of action, § 1606 cast doubt on whether plaintiffs could recover punitive damages against defendants who intentionally engaged in or supported acts of terrorism. The Flatow Amendment was designed to eliminate any uncertainty and make punitive damages definitively available, at least against the "official, employee, or agent" acting on behalf of the state sponsor of terrorism. § 1605 note. The very brief legislative history accompanying the Flatow Amendment supports this interpretation: "The conference agreement inserts language expanding the scope of monetary damage awards available to American victims of international terrorism." H.R. Rep. No. 104-863, at 987 (1996) (Conf. Rep.).

By expressly providing for punitive damages, Congress sought to advance the broader goal of the terrorism exception: altering the conduct of foreign nations engaged in terrorism. As detailed above, the FSIA is not generally intended to affect the substantive law of liability or to affect the primary conduct of foreign states. But the terrorism exception plays a very different role within the statutory scheme. In *Flatow v. Islamic Republic of Iran*, the first case to apply the Flatow Amendment's federal cause of action, the D.C. District Court observed: "The state sponsored terrorism provisions represent a sea change in the United States's approach to foreign

sovereign immunity. For the first time, Congress has expressly created an exception to immunity designed to influence the sovereign conduct of foreign states and affect the substantive law of liability for non-immune acts." 999 F. Supp. 1, 14 (D.D.C. 1998). In examining the legislative history of § 1605(a)(7) and § 1605 note, the *Flatow* court concluded that "one of [Congress's] express purposes is to affect the conduct of terrorist states outside the United States, in order to promote the safety of United States citizens traveling overseas." *Id.* at 15 (compiling legislators' remarks).

Congressman Saxton, who served as Chairman of the House Task Force on Counterterrorism and Unconventional Warfare, believed a punitive damages regime essential to adequately deter state sponsorship of terrorist attacks that could injure or kill Americans. According to statements made by Saxton, "compensatory damages for wrongful death cannot approach a measure of damages reasonably required for a foreign state to take notice." *Id.* at 25 (citing Congressman Jim Saxton, News Release, Saxton to the Flatow Amendment Family: "Be Strong, America is Behind You," (Feb. 26, 1997)). In his view, the only way to achieve the goal of altering state conduct "was to impose massive civil liability on foreign state sponsors of terrorism whose conduct results in the death or personal injury of United States citizens." *Id.* The *Flatow* court ultimately awarded the plaintiffs punitive damages ten times the amount of the $22.5 million calculated in compensatory damages, for a total of $247.5 million.

### 3. *Cicippio-Puleo* **Rejected Implied Federal Action Against Foreign State under FSIA.**

The plain language of the Flatow Amendment permitted a private right of action and accompanying punitive damages only against the "*official, employee, or agent* of a foreign state designated as a state sponsor of terrorism . . . while acting within the scope of his or her office . . ." § 1605 note (emphasis added). The statutory provision made no reference to direct suits against a foreign state. Nevertheless, confusion persisted among district courts for the District of Columbia regarding the intended scope of the private right of action created by Congress.[2] Some courts read the Flatow Amendment in conjunction with the legislative history of § 1605(a)(7) to infer a federal private right of action directly against a foreign state.[3]

---

[2]  The United States District Court for the District of Columbia has adjudicated the vast majority of suits under the FSIA's terrorism exception, many of which are reviewed in detail in *In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d 31, 43 (D.D.C. 2009). Because this District has substantial experience interpreting these statutory provisions, we have reviewed its cases for guidance here.

[3]  *See Cronin v. Islamic Republic of Iran*, 238 F. Supp. 2d 222, 231 (D.D.C. 2002) (holding that the Flatow Amendment provides a cause of action against a foreign state); *see also Regier v. Islamic Republic of Iran*, 281 F. Supp. 2d 87, 98-99 (D.D.C. 2003) (adopting *Cronin*'s reasoning); *Kilburn v. Republic of Iran*, 277 F. Supp. 2d 24, 36-37 (D.D.C.2003) (same).

In *Cicippio-Puleo v. Islamic Republic of Iran*, the D.C. Circuit rejected these interpretations, ruling that "neither 28 U.S.C. § 1605(a)(7) nor the Flatow Amendment, nor the two considered in tandem, creates a private right of action against a foreign government." 353 F.3d at 1033. Instead, "[s]ection 1605(a)(7) merely waives the immunity of a foreign state without creating a cause of action against it . . . ." *Id.* The D.C. Circuit reasoned that there is a "settled distinction in federal law between statutory provisions that waive sovereign immunity and those that create a cause of action." *Id.* (citing *FDIC v. Meyer*, 510 U.S. 471, 483-84 (1994)). And without express language providing for a private right, federal courts should refrain from implying a cause of action into the statutory framework. *See id.* (citing *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 67 n.3 (2001)).[4]

According to *Cicippio-Puleo*, by enacting the Flatow Amendment, Congress effectively created a private cause of action that was *narrower* than the grant of subject-matter jurisdiction under the terrorism exception. Though the federal cause of action extended only to officials and agents of state sponsors of terrorism, Congress had conferred *broader* jurisdiction on federal courts to hear claims directly against a foreign state. But if jurisdiction was established and no official or agent had been identified, a plaintiff would still need to

---

[4] The D.C. Circuit's decision was supported by an amicus brief from the United States which also took the position that the § 1605(a)(7) and the Flatow Amendment did not create a private right of action against foreign states.

identify a "viable cause of action" in order to recover. *Cicippio-Puleo*, 353 F.3d at 1036. So, where a plaintiff sought damages directly from a foreign state, he or she would have to rely upon underlying substantive state or foreign law using the pass-through approach discussed above. Furthermore, no punitive damages would be available for such claims due to § 1606.

### 4. Congress Establishes Private Right of Action Against Foreign States under § 1605A.

The *Cicippio-Puleo* decision presented hurdles for some FSIA plaintiffs seeking to hold state sponsors of terrorism accountable. The pass-through approach created a patch-work of inconsistent recovery for victims of terrorism and their families because the availability of a cause of action depended upon choice of law factors such as the law of the plaintiff's domicile. For example, family members of Marines and servicemen killed in the 1983 terrorist bombing in Beirut brought suit against Iran for intentional infliction of emotional distress. *See Peterson v. Islamic Republic of Iran*, 515 F. Supp. 2d 25, 43-44 (D.D.C. 2007). While some family members were able to bring successful claims, other claims were barred effectively on the basis of the plaintiff's domicile. Those family members domiciled in Pennsylvania or Louisiana had no standing to sue because the substantive law of those states required plaintiffs to be physically present at the time of the attack. *See id.*

In addition, the *Cicippio-Puleo* decision frustrated the goal of deterring state sponsorship of terrorism

through massive damages awards in civil suits. Section 1606 of the FSIA barred punitive damages even if such damages might be permitted under the pertinent substantive law. As a result, punitive damages were generally unavailable unless plaintiffs could identify an officer or agent responsible for coordinating or supporting the terrorist act.

Congress responded by repealing and revisiting in its entirety the terrorism exception. Section 1083 of the 2008 National Defense Appropriations Act (NDAA) replaces § 1605(a)(7) and the Flatow Amendment with a new statute, codified at § 1605A. Pub. L. No. 110-181, § 1083(2)-(3), 112 Stat. 3, 342-43. The new statute imports the original grant of jurisdiction from § 1605(a)(7) largely unchanged, while adding new categories of potential claimants. *See* § 1605A(a)(1)-(2). The 1996 exception had preserved sovereign immunity if "neither the claimant nor the victim was a national of the United States." § 1605(a)(7)(B)(ii). The new statute now provides: "The court shall hear a claim under this section if . . . the claimant or the victim was . . . a national of the United States . . . [or a member of the military or a United States employee]. § 1605A(a)(2).

In addition, Congress expressly created a private right of action affording compensatory and punitive damages against a "foreign state" and "any official, employee, or agent of that foreign state while acting within the scope of his or her office, employment, or agency." § 1605A(c). The new cause of action also provides a range of additional rights that were previously unavailable, including

expanded remedies for plaintiffs seeking to attach assets of state sponsors of terrorism within the jurisdiction of the United States. The statute only permits four categories of claimants to invoke the private right of action: United States citizens, members of the military, and United States employees. *See* § 1605A(c) ("a foreign state . . . shall be liable to . . . (1) a national of the United States, (2) a member of the armed forces, (3) an employee of the Government of the United States . . . or (4) the legal representative of a person described in paragraph (1), (2), or (3)").

When Senator Frank Lautenberg introduced the bill in the Senate, he remarked:

> Congress's original intent behind the 1996 legislation has been muddied by numerous court decisions. . . . Since [*Cicippio-Puleo*], judges have been prevented from applying a uniform damages standard to all victims in a single case because a victim's right to pursue an action against a foreign government depends upon State law. My provision in this bill fixes this problem by reaffirming the private right of action under the Flatow Amendment against the foreign state sponsors of terrorism themselves.

154 Cong. Rec. S54 (daily ed. Jan. 22, 2008) (statement of Sen. Lautenberg). However, sixteen years after the enactment of the original terrorism exception and Congress's revisions, some mud remains in the water. The resulting statute codified in § 1605A "is anything but a model of clarity" and gaps remain in interpreting Congress's

intent. *Roeder v. Islamic Republic of Iran*, 742 F. Supp. 2d 1, 13 (D.D.C. 2010) (quoting government's brief). Here, we consider § 1605A's application to foreign national family members of an American victim of a terrorist act.

### B. Subject-Matter Jurisdiction Exists over the Leibovitchs' Emotional Distress Claims.

The district court dismissed claims brought by S.L.'s family members reasoning that without United States citizenship they could not invoke the federal cause of action, § 1605A(c). The court also declined to exercise supplemental jurisdiction over the family's claims under Israeli law. The Leibovitchs appeal, contending that the terrorism exception confers original jurisdiction over pass-through claims brought by family members under foreign sources of law for harm caused by the injury or death of an American relative. We review a district court's dismissal for lack of subject-matter jurisdiction de novo. *Graczyk v. W. Pub. Co.*, 660 F.3d 275, 278 (7th Cir. 2011).

Though the district court declined to exercise supplemental jurisdiction, we note that original jurisdiction, where it exists, is not so discretionary. Section 1605A(2) provides that a "court *shall* hear a claim under this section" (emphasis added) if the other conditions of the statute are met. We observe that "[f]ederal courts, though courts of limited jurisdiction . . . have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Mims v. Arrow Fin. Servs., LLC*, ___ U.S. ___, 132 S. Ct. 740, 747

(2012) (internal quotation marks and citations omitted). If original subject-matter jurisdiction has been established, the district court must hear the Leibovitchs' claims.

As a preliminary matter, the trial court was correct that the foreign national family members cannot pursue a claim for personal injuries under the new federal cause of action created by Congress. Section 1605A(c) provides:

> Private right of action.—a foreign state . . . shall be liable to . . . (1) a national of the United States, (2) a member of the armed forces, (3) an employee of the Government of the United States, or of an individual performing a contract awarded by the United States Government, acting within the scope of the employee's employment, or (4) the legal representative of a person described in paragraph.

The Leibovitchs concede that the federal cause of action is not available to them because only S.L. is a "national of the United States." S.L.'s family members do not fall within any of the four categories of claimants outlined in this provision.

However, the plaintiffs contend that the subject-matter jurisdiction conferred by Congress in § 1605A(a) is broader than the types of claimants who may make use of the private right of action in § 1605A(c). In pertinent part, § 1605A(a) provides:

> (1) No immunity.—A foreign state shall not be immune from the jurisdiction of courts of the United States . . . in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extraju-

dicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act . . . .

(2) Claim heard.—The court shall hear a claim under this section if . . .

> (A)(ii) *the claimant or the victim was*, at the time the act described in paragraph (1) occurred—
>
>> (I) a national of the United States;
>>
>> (II) a member of the armed forces; or
>>
>> (III) otherwise an employee of the Government of the United States, or of an individual performing a contract awarded by the United States Government, acting within the scope of the employee's employment . . .

(emphasis added). Since § 1605A(a)(2)(A)(ii) grants jurisdiction over cases where *either* the claimant *or* the victim was a United States citizen, the Leibovitchs argue that original subject-matter jurisdiction exists over their claims because S.L. was a victim in the terrorist attack and is a United States national. Though the family members cannot make use of the private right of action from § 1605A(c), they argue that the district court must adjudicate their claims under Israeli law using the pass-through approach employed after *Cicippio-Puleo*.

We therefore consider whether § 1605A's jurisdictional scope precisely tracks the new private right of ac-

tion—which excludes most foreign nationals even if they are family members—or whether the pass-through approach survives Congress's substantial revision of the FSIA's terrorism provision. We are not aware of a court of appeals that has squarely reached this issue and we note at the outset that the answer is less than crystal-clear, given the convoluted history of this statute. One of the stated reasons given by Senator Lautenberg for adopting the revised terrorism exception was that "judges have been prevented from applying a uniform damages standard to all victims in a single case because a victim's right to pursue an action against a foreign government depends upon State law." 154 Cong. Rec. S54. Permitting pass-through suits using the substantive law of the plaintiff's domicile will lead to similar inconsistencies to those that occurred before the enactment of § 1605A, albeit only for foreign national family members. Nevertheless, several factors suggest that Congress intended to confer jurisdiction over the Leibovitchs' emotional distress claims.

First, the plain text and plain meaning of § 1605A(a)(2)(A)(ii) extends jurisdiction to cases where *either* "the claimant or the victim was, at the time of the [terrorist] act" a United States citizen. The claimant and victim need not both be American citizens. As a general matter, "[w]e should prefer the plain meaning since that approach respects the words of Congress." *Lamie v. U.S. Tr.*, 540 U.S. 526, 536 (2004). If Congress intended a jurisdictional scope coterminous with that of § 1605A(c)'s private right of action for United States nationals, there would have been no need to include

the word "victim." We would show little deference to Congress's chosen language if we simply read the word "victim" out of the statute entirely. Denying jurisdiction over family members' claims for American victims would require us to ignore the disjunctive structure of § 1605A(a)(2)(A)(ii).[5]

Congress's intention to cover claims by foreign national family members also emerges from the legislative history accompanying the 1996 precursor to this jurisdiction-conferring provision: § 1605(a)(7)(B)(ii). Congress slightly amended language in this provision to waive sovereign immunity if "*neither* the claimant *nor* the victim was a national of the United States . . . when the act upon which the claim is based occurred." *Id.* (emphasis added). The accompanying House Report explained that the clarification was made to ensure re-

---

[5] In *La Reunion Aerienne v. Socialist People's Libyan Arab Jamahiriya*, the D.C. Circuit interpreted the former version of the terrorism exception, § 1605(a)(7), as permitting third-party insurers to sue Libya for claims paid to families of American victims killed in the bombing of a French airliner. 533 F.3d 837 (2008). The court found the statutory language of § 1605(a)(7) "clear on its face . . . . [I]f either the claimant or the victim is a national of the United States, then immunity is waived." *Id.* at 844. Since there was "no dispute that the victims were United States nationals," sovereign immunity was "not a bar" to suits by the claimant insurers. *Id.* Though *La Reunion Aerienne* dealt with the former iteration of the terrorism exception, we find the statutory language of § 1605A(a)(2)(A)(ii) similarly "clear on its face."

covery for foreign national family members: "The intent of the drafters was that a family should have the benefit of these provisions if either the victim of the act or the survivor who brings the claim is an American national. Due to a drafting error, the current law can be read to require that both the victim and the claimant must be American nationals before the claimant can use these provisions. . . . The correction will benefit several of the Pan Am 103 families who could potentially lose their claims if this correction is not passed." H.R. Rep. 105-48 at 2 (1996). Since S.L. was an American national and a victim of the terrorist act, Congress appears to have intended her immediate family members to "have the benefit" of the FSIA's jurisdictional provisions even if they cannot make use of the federal cause of action.

Next, the overall jurisdiction-conferring structure of the FSIA supports the interpretation that the pass-through approach survives Congress's creation of a private right of action. The typical rule for suits under the FSIA is that the statute "operates as a 'pass-through' to state law principles." *Pescatore*, 97 F.3d at 12. So, by bringing a claim against Iran under Israeli law, S.L.'s family members would be making traditional use of the FSIA.

Section 1605A is unique in that it not only confers jurisdiction but also includes a private right of action, a remedy not offered under any other exception to sovereign immunity. But the questions of whether a private right of action exists and whether there has been a waiver of sovereign immunity are "two analytically

distinct inquiries" that should not be "conflate[d]" *Meyer*, 510 U.S. at 484 (1994). As the D.C. Circuit recognized in *Cicippio-Puleo*, Congress's enactment of the Flatow Amendment did not require that the private right of action precisely match the jurisdictional scope of § 1605(a)(7). 359 F.3d at 1033. Congress was free to establish a narrower federal cause of action applying only to an "official, employee, or agent of a foreign state . . . ." § 1605(a)(7) note. The same is true here; Congress has established a private right of action principally for American *claimants* while waiving sovereign immunity in a broader set of cases also involving American *victims*.

A principal objective seems to have motivated Congress during its twelve-year dialogue with the courts over the terrorism exception: permitting massive judgments of civil liability against nations that sponsor terrorism. Congress adopted the Flatow Amendment "to make the availability of punitive damages undisputable." *Flatow*, 999 F. Supp. at 25 (citing Saxton News Release, *supra*). After *Cicippio-Puleo* confined the Flatow Amendment's federal cause of action to agents and officers of state sponsors of terrorism, Congress rebuffed the D.C. Circuit by enacting § 1605A(c). But there is no indication that it acted in order to narrow the original scope of jurisdiction. Instead, the legislative history suggests that § 1605A(c) was intended to extend punitive damages to foreign nations sponsoring terrorism and thereby allow the massive liability judgments the original drafters hoped would deter state support for terrorism. Rejecting jurisdiction over claims brought by foreign national family members would be at odds with

Congress's goal of expanding the liability of state sponsors of terrorism. *See* Ruthanne M. Deutsch, *Suing State-Sponsors of Terrorism Under the Foreign Sovereign Immunities Act: Giving Life to the Jurisdictional Grant After Cicippio-Puleo*, *38* Int'l Law 891, 901-03, 916 (2004) (arguing that Flatow Amendment's private right of action did not displace broader grant of jurisdiction and that federal courts have a responsibility to give effect to Congress's full jurisdictional grant).

We pause to note that there are significant questions regarding the wisdom of combating international terrorism through private civil suits. Because terrorism involves a broad range of foreign policy considerations, many commentators have argued that the political branches must address the matter as opposed to a broad range of courts and judges adjudicating competing cases and controversies. *See Iran Terrorism Litig.*, 659 F. Supp. 2d at 38 (D.D.C. 2009) ("If the decade-long history of these FSIA terrorism actions has revealed anything, it is that the Judiciary cannot resolve the intractable political dilemmas that frustrate these lawsuits; only Congress and the President can. Today, at the start of a new presidential administration—one that has sought engagement with Iran on a host of critical issues—it may be time for our political leaders here in Washington to seek a fresh approach."); *see also, e.g.*, Anne-Marie Slaughter & David Bosco, *Plaintiff's Diplomacy*, Foreign Aff. 102 (Sept/Oct 2000); Daveed Gartenstein-Ross, *A Critique of the Terrorism Exception to the Foreign Sovereign Immunities Act*, 34 N.Y.U. J. Int'l L. & Pol 887 (2002). Whatever the merits of this debate, we are obliged to focus on statutory text and

congressional intent and we do not find evidence to support the conclusion that Congress intended to foreclose claims by noncitizen family members when it enacted § 1605A(c).

In *Estate of Doe v. Islamic Republic of Iran*, a D.C. district court considered claims brought by foreign national family members who sought to make use of the new federal cause of action in § 1605A(c). 808 F. Supp. 2d 1, 17-19 (D.D.C. 2011). The court ruled that since they did not fall within any of § 1605A(c)'s four permitted categories, "those plaintiffs who are foreign national family members of victims of the terrorist attacks in Beirut lack a federal cause of action. But they may continue to pursue claims under applicable state and/or foreign law. Although § 1605A created a new cause of action, it did not displace a claimant's ability to pursue claims under applicable state or foreign law upon the waiver of sovereign immunity." *Id.* at 20. We agree and conclude that the plaintiffs have established subject-matter jurisdiction over their claims for emotional distress arising out of the injuries inflicted upon S.L., a U.S. citizen victim of the terrorist attack.[6]

---

[6] Since 2008, some district courts have concluded that § 1605A(c) provides the only cause of action for American citizen plaintiffs who sought to bring simultaneous claims under state law. In *Gates v. Syrian Arab Republic*, the court considered common law tort claims brought alongside § 1605A(c) and found that "state law no longer controls the nature of the liability and damages that may be sought when

(continued...)

A separate question not addressed by plaintiffs, is whether S.L. herself constitutes a "victim" as the term is used in § 1605A(a)(2)(A)(ii). Section 1605A does not define "victim." There can be no doubt that S.L. is a victim in the sense that she received a severe and traumatizing injury in the attack that killed her sister. But we note that N.L., a foreign national, was the individual murdered by the "act of . . . extrajudicial killing." § 1605A(a)(1). The D.C. district courts that have considered the definition of "victim" have generally interpreted it broadly. *See Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 68 (D.D.C. 2010) ("the Court identifies victims as those who suffered injury or died as a result of the attack and claimants as those whose claims arise out of those injuries or deaths but who might not be

---

(...continued)

it is a foreign government that is sued: Congress has provided the 'specific source of law' for recovery." 580 F. Supp. 2d 53, 66 (D.D.C. 2008) (citing *Acree v. Republic of Iraq*, 370 F.3d 41, 59 (D.C.Cir. 2004)); s*ee also Estate of Heiser v. Islamic Republic of Iran*, 659 F. Supp. 2d 20, 23 (D.D.C. 2009) ("[P]laintiffs proceeding under § 1605A can forgo the pass-through approach that controlled in the wake of *Cicippio-Puleo* and may assert claims on the basis of the new federal statute alone."). We note that these cases present a different scenario because American citizen plaintiffs have the option of proceeding under the statute's private right of action. In contrast, Congress has not provided a "specific source of law" for foreign national family members who cannot bring suit under § 1605A(c). Therefore, the pass-through approach continues to apply to this class of plaintiffs.

victims themselves. In this case, victims include the 241 members of the U.S. armed forces who were killed, the many more who were physically and emotionally injured, and the family members alleging injury suffered from intentional infliction of emotional distress.”). We agree with this interpretation. Though she is not a victim of extrajudicial killing, S.L. is a victim of the *act* that killed her sister because she was severely injured in the same assault. Therefore, jurisdiction exists for her foreign national family members to bring claims derived from S.L.'s injury. *See also Estate of Doe*, 808 F. Supp. 2d at 13; *Peterson*, 515 F. Supp. 2d at 66 (calculating damages for claims brought by family members of servicemen who were injured but not killed in the 1983 attack on the Marine Corps barracks in Beirut).

A final matter warrants discussion. In its response to the plaintiffs' motion for reconsideration, the district court issued a very brief statement including a two-sentence analysis hypothesizing that “[e]ven assuming that there is jurisdiction over these plaintiffs' solatium claims [under Israeli law,] . . . [t]he declarations they provide to support the provisions of Israeli law, however, [do] not establish that Israeli law recognizes solatium or grief claims based on injury to a relative.” Our concern is that a court may not presume hypothetical jurisdiction in order to decide a question on the merits. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998) (“Hypothetical jurisdiction produces nothing more than a hypothetical judgment—which comes to the same thing as an advisory opinion, disapproved by this Court from the beginning.”). Therefore, we vacate

the district court's hypothetical determination and remand for reconsideration of the emotional distress claims. *See In re LimitNone, LLC,* 551 F.3d 572, 577 (7th Cir. 2008).

## III. CONCLUSION

We REVERSE the judgment of the district court and REMAND for further proceedings consistent with this opinion.