In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 16-2504

SHLOMO LEIBOVITCH, *et al.*,

*Plaintiffs-Appellants*,

*v.*

ISLAMIC REPUBLIC OF IRAN, *et al.*,

*Defendants*,

and

BANK OF TOKYO-MITSUBISHI UFJ, LTD. and BNP PARIBAS,

*Appellees*.

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 08 C 1939 — **Ruben Castillo**, *Chief Judge*.

_____

ARGUED FEBRUARY 23, 2017 — DECIDED MARCH 29, 2017

_____

Before POSNER, EASTERBROOK, and MANION, *Circuit Judges*.

POSNER, *Circuit Judge*. In 2003, a 7-year-old Israeli girl was killed, her 3-year-old sister (an American citizen) perma-

nently disabled, and six Israeli members of the children's family (two other siblings of the Israeli girl plus her parents and grandparents) were injured emotionally, when the minivan they all were riding in on a highway in Jerusalem was shot up by members of Palestine Islamic Jihad, a terrorist group supported by the government of Iran.

The surviving family members, plus the estate of the child who was killed, filed a damages suit against the Islamic Republic of Iran and its Ministry of Information and Security (we'll simplify by pretending that the only defendant is Iran) in the federal district court in Chicago, under both the Antiterrorism Act, 18 U.S.C. § 2333, and the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605A. After protracted proceedings that included an appeal to this court, see *Leibovitch v. Islamic Republic of Iran*, 697 F.3d 561 (7th Cir. 2012), the district court entered a default judgment of $67 million against the Iranian defendants.

But how to collect? The plaintiffs began their search with two large foreign banks that had held Iranian assets in the past. Although both the Japanese bank, Bank of Tokyo-Mitsubishi UFJ, Limited, and the French bank, BNP Paribas, have branches in Chicago, neither branch holds any Iranian government assets or has any information regarding such assets held by other branches of their parent banks, or by the parent banks themselves in their home offices (Tokyo and Paris, respectively). In an effort to obtain that information, the plaintiffs issued both federal subpoenas and Illinois citations (the equivalent of subpoenas) in the federal district court in Chicago, seeking an order directing the parent banks to reveal Iranian assets held in any of the far-flung, worldwide branches of the two banks. See Fed. R. Civ. P. 45.

The Japanese bank has branches in more than 40 countries and the French bank has branches in 75 countries, and it is possible that branches in some of those countries, or perhaps the home offices of the two parent banks, hold Iranian assets that the plaintiffs might be able to seize by means of their default judgment.

The banks agreed to provide the information sought by the plaintiffs' citations and subpoenas, but only with respect to their 17 branches in the United States—and it turns out that there are no Iranian assets in any of those branches. The total number of branches of the two banks worldwide exceeds 7,500, and plaintiffs insist that they are entitled, by virtue of their subpoenas and citations, to compel the parent banks to search *all* their branches for Iranian government assets—assets that once located the plaintiffs might be able to execute their default judgment against. The banks asked the district court to quash the subpoenas, arguing that the federal court does not have personal jurisdiction over them to force them to comply.

At the oral argument of the appeal, the plaintiff's counsel argued that personal jurisdiction is irrelevant for enforcing subpoenas under Rule 45. That can't be right, for a court that issues subpoenas is *enforcing* something rather than begging, and so far as we know no court has bought the argument. See, e.g., *Gucci America, Inc. v. Weixing Li*, 768 F.3d 122, 134, 136–37 (2d Cir. 2014); 9A Charles A. Wright *et al.*, *Federal Practice & Procedure* § 2454, pp. 398–99 (3d ed. 2008). So to be entitled to use the federal district court in Chicago to obtain from the parent banks the worldwide information that the plaintiffs seek, they had to be able to prove that the court has personal jurisdiction over the banks, that is, jurisdiction over

the "persons" (the two banks) against which relief is sought—hence jurisdiction to subpoena them.

It's not as if the foreign banks are incorporated or head-quartered in the United States. If they were, they would be within the court's personal jurisdiction, and the district court could force them to comply with any discovery request that didn't present an undue burden. But "a court may assert jurisdiction over a foreign corporation 'to hear any and all claims against [it]' only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014). That is hardly the situation with regard to the two foreign banks.

It is true that a district court can have what is called "specific" jurisdiction over a corporation if the corporation's activities within the jurisdiction of the court are closely related to the lawsuit or, as in this case, to subpoenas (or state-court citations, which needn't be discussed separately) issued within that jurisdiction. See, e.g., *Walden v. Fiore*, 134 S. Ct. 1115, 1121–23 (2014); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92 (1980); *Application to Enforce Administrative Subpoenas of S.E.C. v. Knowles*, 87 F.3d 413, 417 (10th Cir. 1996). But the subpoenas issued in this case are not tailored to the banks' presence or activities in the United States. If the subpoenas sought only to discover whether, and if so what, Iranian government assets were in either or both of the two Chicago branch banks, the district court would have jurisdiction to enforce the subpoenas (and citations) because the branches are in the court's district. But we now know that the Chicago branches neither are holding Iranian government assets nor know which if any of their

sister branches elsewhere (either in or outside the United States), or the parent banks' home offices, are holding any such assets. That being so, there can be no personal jurisdiction over the parents. As there's no indication that any U.S. branch of either bank is holding Iranian assets, if the plaintiffs are determined to execute their default judgment against Iranian government assets they'll have to look abroad.

We're puzzled that none of the plaintiffs who brought the suit against Iran that resulted in the default judgment are residents of Illinois. Why they are suing here rather than in the districts in which they live or work is unexplained. What is worse than merely unexplained is that they've presented no evidence to suggest that the two Chicago branch banks are either holding Iranian government assets or have any knowledge of where those assets might be held. In short, what are they doing here?

The briefs filed in this case sum to 140 pages and include numerous issues that we haven't touched on—having no need to do so. It should be apparent from what we've said so far that the plaintiffs have no legal right to the information that they have demanded from the respondent Tokyo and Paris banks.

AFFIRMED