# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued March 10, 2023        Decided June 9, 2023

No. 22-5176

END CITIZENS UNITED PAC,
APPELLANT

v.

FEDERAL ELECTION COMMISSION,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-cv-01665)

———

*Kevin P. Hancock* argued the cause for appellant. With him on the briefs was *Adav Noti*.

*David W. Casazza*, appointed by the court, argued the cause for *amicus curiae* in support of the judgment below. With him on the brief was *Jacob T. Spencer*, appointed by the court.

Before: WILKINS, *Circuit Judge*, and ROGERS and TATEL, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* ROGERS.

ROGERS, *Senior Circuit Judge*: This appeal arises from the denial of a motion for a default judgment. End Citizens United ("ECU") sued the Federal Election Commission alleging the Commission unlawfully dismissed its administrative complaint. Although the Commission failed to enter an appearance or otherwise defend the lawsuit, the district court denied ECU's motion based on the Commission's after-the-fact explanation for its dismissal. The issue on appeal is whether the district court erred by relying on the non-contemporaneous explanation in light of well-established circuit precedent requiring the Commission to provide a timely explanation of its reason for dismissing an administrative complaint. Guided as well by Supreme Court precedent, the court reverses the district court's judgment and remands the case to it with instructions to return the case to the Commission.

**I.**

Under the Federal Election Campaign Act, 52 U.S.C. § 30101 *et seq.*, the Federal Election Commission is directed to enforce the statutory restrictions on the sources and amounts of contributions made "for the purpose of influencing any election for Federal office," *id*. § 30101(8)(A)(i); *see id*. § 30106(b)(1). Generally, the Act "seeks to remedy any actual or perceived corruption of the political process." *FEC v. Akins*, 524 U.S. 11, 14 (1998). The Commission itself is composed of six voting members, no more than three of whom may be "affiliated" with the same political party. 52 U.S.C. §§ 30106(a)(1), (a)(2)(A); *FEC v. NRA Pol. Victory Fund*, 6 F.3d 821, 826–28 (D.C. Cir. 1993). The Commission may investigate potential violations on its own initiative or in response to an administrative complaint by any person who "believes" that a statutory

violation has occurred.  52 U.S.C.  §§ 30107(a), 30109(a).  If at least four Commissioners determine there is "reason to believe" the allegations, then the Commission "shall" conduct an investigation, *id*. § 30109(a)(2), which may result in a negotiated settlement, a criminal referral, or a civil enforcement action, *id*. §§ 30109(a)(4)–(6).   In the absence of four votes to proceed, the Commission may dismiss the administrative complaint and close the file.  *See, e.g.*, *Campaign Legal Ctr. v. FEC*, 31 F.4th 781, 785 (D.C. Cir. 2022).  The Commissioners who vote against proceeding "must issue a Statement of Reasons to serve as the basis for judicial review." *Id*.

"Any party aggrieved by" the Commission's dismissal of a complaint may seek judicial review within 60 days. 52 U.S.C. § 30109(a)(8)(A)–(B).  A court "may declare that the dismissal of the complaint . . . is contrary to law," *id*. § 30109(a)(8)(C), if the Commission relied on "an impermissible interpretation of the Act," or the dismissal was otherwise "arbitrary or capricious, or an abuse of discretion," *Orloski v. FEC*, 795 F.2d 156, 161 (D.C. Cir. 1986).  Upon a judicial determination that the dismissal was improper, the Commission has 30 days "to conform with such declaration," failing which the complainant may file a citizen suit to "remedy the violation involved in the original complaint."  52 U.S.C. § 30109(a)(8)(C).

According to the complaint, ECU is a political action committee that supports candidates aligned with its mission of "get[ting] big money out of politics," and it supported President Biden in the 2020 presidential race.  Compl. ¶¶ 12–14.  On May 9, 2019, ECU filed an administrative complaint with the Commission alleging that former President Trump's 2020 campaign committee solicited and directed funds to America First Action, a "super PAC," without regard to statutory source

prohibitions and contribution limits, in violation of 52 U.S.C. § 30125(e). Compl. ¶¶ 2, 4. The Commission's Office of General Counsel recommended that the Commission find "reason to believe" the allegation that the Trump campaign committee unlawfully "solicit[ed] soft money contributions" to America First Action. *Id.* ¶ 5 (citing First General Counsel's Report, MURs 7340/7609, at 29 (Nov. 24, 2020)). On April 20, 2021, with one Commissioner recused, the Commission deadlocked 3-2 on a vote to find "reason to believe" the soft-money solicitation allegation against the Trump campaign committee, with Vice Chair Dickerson and Commissioner Cooksey opposed. Certification in MURs 7340/7609, Exec. Sess. April 20, 2021, at 1–2 (May 5, 2021). The Commission voted unanimously to "[c]lose the file" and dismissed ECU's administrative complaint. *Id.* Exec. Sess. April 22, 2021, at 2.

On June 21, 2021, ECU sued the Commission, alleging that its failure to find "reason to believe" and its dismissal of the administrative complaint without providing an explanation were arbitrary, capricious, and contrary to law. Compl. ¶¶ 37–39; 52 U.S.C. § 30109(a)(8)(A). Two months after the dismissal of the administrative complaint and four days after ECU filed its lawsuit, Dickerson and Cooksey issued a statement they had voted "pursuant to [thei]r prosecutorial discretion" against finding "reason to believe" the soft-money solicitation allegation. Statement of Reasons of Vice Chair Allen Dickerson and Commissioner Sean J. Cooksey, MURs 7340/7609, at 4 (June 25, 2021) ("Dickerson/Cooksey statement"). When the Commission failed to enter an appearance or otherwise defend the lawsuit, the clerk of the district court entered default against the Commission.

The district court denied ECU's motion for a default judgment, pursuant to Federal Rule of Civil Procedure 55(b)(2), premised on a lack of authority to "second guess" the

explanation in the Dickerson/Cooksey statement. *End Citizens United PAC v. FEC*, No. 1:21-cv-01665, 2022 WL 1136062, at *2 (D.D.C. Apr. 18, 2022). Acknowledging that the statement was "belated" and that "*post hoc* rationalizations for agency action" are not given "credence," *id*. at *2–3, the district court concluded that the statement was exempt from the "general" prohibition on *post hoc* rationalizations because it was written by the "very decisionmakers responsible for the agency action" and was "the only explanation these Commissioners have ever offered for their decision," *id*. at *2. The court found "no reason to ignore the explanation it already ha[d] before it" as it "would have remanded the case to give the Commission . . . an opportunity" to explain the basis of the dismissal had they "remained silent." *Id*. at *2 (internal quotation marks omitted). Treating the Dickerson/Cooksey statement as the Commission's reason for dismissing ECU's administrative complaint, the court ruled that the dismissal was nonreviewable because "the Commissioners who voted against enforcement invoked prosecutorial discretion" and dismissed the case. *Id*. at *2–3.

## II.

ECU appeals, contending that the Commission acted "contrary to law" in dismissing its complaint in the absence of the timely explanation required by circuit law and that this violation is not cured by the Dickerson/Cooksey statement that was an impermissible *post hoc* rationalization. Appellant's Br. 20, 35. This court appointed Amicus Curiae to present arguments in support of the district court judgment, *End Citizens United PAC v. FEC*, No. 22-5176 (D.C. Cir. Nov. 1, 2022), and expresses appreciation for Amicus's assistance.

This court reviews the district court's decision whether to issue a default judgment for "abuse of discretion." *Fraenkel v. Islamic Republic of Iran*, 892 F.3d 348, 356 (D.C. Cir. 2018). "'A district court would necessarily abuse its discretion if it based its ruling on' an error of law." *Id*. (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)).

In *Democratic Congressional Campaign Committee v. FEC* (*DCCC*), 831 F.2d 1131 (D.C. Cir 1987), the court held that the Commission's dismissal of an administrative complaint "due to a deadlock" is subject to judicial review under the Federal Election Campaign Act, *id*. at 1132–33. There, the Commission deadlocked 3-2 on finding reason to believe and dismissed the complaint over the contrary recommendation of its General Counsel. *Id*. This court held that the dismissal was amenable to judicial review under the "contrary to law" standard of 52 U.S.C. § 30109(a)(8)(A), and expressly rejected the Commission's argument that *Heckler v. Chaney*, 470 U.S. 821 (1985), "immunized" deadlock dismissals from review "because they are simply exercises of prosecutorial discretion," *DCCC*, 831 F.2d at 1133–34; *see also Akins*, 524 U.S. at 26. To enable a reviewing court to "intelligently determine whether the Commission is acting contrary to law," this court concluded that the Commissioners finding no reason to believe the allegations needed "to state their reasons why." *DCCC*, 831 F.2d at 1132 (internal quotation marks omitted).

The following year in *Common Cause v. FEC*, 842 F.2d 436 (D.C. Cir. 1988), the court reaffirmed the reviewability of a deadlock dismissal and the need for a statement of reasons to "allow meaningful judicial review of the Commission's decision not to proceed," *id*. at 449. The court explained that a statement issued "at the time when a deadlock vote results in . . . dismissal" serves three "important statutory policies" of

§ 30109: (1) it "allow[s] meaningful judicial review of the Commission's decision not to proceed" and guards against the risk that "similarly situated parties may not be treated evenhandedly"; (2) it "contributes to reasoned decisionmaking by the agency" by "ensur[ing] reflection and creat[ing] an opportunity for self-correction"; and (3) it "enhance[s] the predictability of Commission decisions for future litigants." *Id*. The court has continued to emphasize the "control[ling]" principles of *DCCC* and *Common Cause*. *FEC v. Nat'l Republican Senatorial Comm.*, 966 F.2d 1471, 1476 (D.C. Cir. 1992); *see Chamber of Com. v. FEC*, 69 F.3d 600, 603 (D.C. Cir. 1995); *Citizens for Resp. & Ethics in Washington v. FEC* (*Commission on Hope*), 892 F.3d 434, 437–38 (D.C. Cir. 2018); *Campaign Legal Ctr. v. FEC*, 952 F.3d 352, 356 (D.C. Cir. 2020); *Citizens for Resp. & Ethics in Washington v. FEC* (*New Models*), 993 F.3d 880, 883 n.3 (D.C. Cir. 2021); *Campaign Legal Ctr. v. FEC*, 31 F.4th 781, 785 (D.C. Cir. 2022).

As summarized in *Commission on Hope*, regardless whether the Commission's deadlock and dismissal results from a purported exercise of prosecutorial discretion, the Commission is bound by two "propositions of circuit law":

> [I]f the Commission fails to muster four votes in favor of initiating an enforcement proceeding, the Commissioners who voted against taking that action should issue a statement explaining their votes[] . . . [and] for purposes of judicial review, the statement or statements of those naysayers — the so-called "controlling Commissioners" — will be treated as if they were expressing the Commission's rationale for dismissal.

892 F.3d at 437–38 (citing *Common Cause*, 842 F.2d at 449). Here, Dickerson and Cooksey were the "controlling

8

Commissioners" on the dismissal of ECU's administrative complaint: they voted not to find "reason to believe" the soft-money solicitation allegation and thereby against "initiating an enforcement proceeding" contrary to the General Counsel's recommendation. *Id.* at 437. As the controlling Commissioners, they were obligated to issue a contemporaneous statement "explaining their votes," which the court would treat as the Commission's reason for the dismissal. *Id*. at 437, 438 n.5.

Amicus suggests that the Commission met its obligation under *Common Cause*. First, Amicus characterizes the Commission's unsuccessful 2-3 vote of April 22, 2021, to "[d]ismiss under *Heckler*" viewed "by itself" as all the explanation that is required. Amicus Br. 27. Because *Heckler* recognized that "an agency's decision not to prosecute or enforce . . . is a decision generally committed to an agency's absolute discretion," 470 U.S. at 831, Amicus maintains that no "reference to the [Dickerson/Cooksey] Statement" is necessary, Amicus Br. 27. "As with other actions taken by the Commission, dismissal of a matter requires the vote of at least four Commissioners." Statement of Policy on Commission Action in Initial Stage of Enforcement Process, 72 Fed. Reg. 12,545, 12,545–46 (Mar. 16, 2007); *see* 52 U.S.C. § 30106(c). Here, before the Commission's unanimous vote to "close the file," several other votes also failed to get the requisite four votes for the Commission to act, and there is no suggestion that those votes impart the Commission's reason for the dismissal of the soft-money solicitation allegation, Amicus Br. 27–29.

The basis for the dismissal "must be measured by what the Commission did, not by what it might have done." *SEC v. Chenery Corp.*, 318 U.S. 80, 93–94 (1943). So to determine whether the Commission exercised its prosecutorial discretion under *Heckler* in effecting a deadlock dismissal, the court looks

not to the label given to one or more of its failed votes but rather to the statement of reasons of the controlling Commissioners. *See, e.g.*, *Comm'n on Hope*, 892 F.3d at 438; *New Models*, 993 F.3d at 883. The failed *Heckler* vote is not itself a substitute for a statement explaining "why [ECU's] complaint was dismissed in spite of the [the Commission's] General Counsel's contrary recommendation." *DCCC*, 831 F.2d at 1135.

Second, Amicus maintains that although the Dickerson/Cooksey statement was issued after the commencement of the underlying litigation and the expiration of the statutory deadline to challenge the dismissal, 52 U.S.C. § 30109(a)(8), it is properly before the court as an explanation of the controlling Commissioners' votes. But this is in tension with *Common Cause*'s requirement that the controlling Commissioners' explanation be issued "at the time when a deadlock vote results in an order of dismissal." 842 F.2d at 449. The Commission "cannot *sua sponte* update the administrative record when an action is pending in court." *Comm'n on Hope*, 892 F.3d at 438 n.5. This is consonant with the Supreme Court's emphasis on the "'foundational principle of administrative law' that judicial review of agency action is limited to 'the grounds that the agency invoked when it took the action.'" *DHS v. Regents of the Univ. of Cal.,* 140 S. Ct. 1891, 1907 (2020) (quoting *Michigan v. EPA*, 576 U.S. 743, 758 (2015)); *see Chenery*, 318 U.S. at 94–95. Because the Dickerson/Cooksey statement is "the only explanation these Commissioners have ever offered for their decision," *End Citizens United*, 2022 WL 1136062, at *2, it is neither an elaboration of nor a supplement to a contemporaneously issued "initial explanation," *Regents*, 140 S. Ct. at 1908; *see Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419 (1971); *Am. Textile Mfrs. Inst., Inc. v. Donovan*, 452 U.S. 490, 539 (1981). Amicus fails to identify any authority accepting a failed vote as an initial explanation upon which the

Commission may later elaborate consistent with the prohibition on *post hoc* rationalizations.

Amicus maintains that the non-contemporaneous statement is exempt from the *post hoc* prohibition because Dickerson and Cooksey were the "proper decisionmakers." Amicus Br. 35; *see Regents*, 140 S. Ct. at 1934 (Kavanaugh, J., dissenting) (quoting *Alpharma, Inc. v. Leavitt*, 460 F.3d 1, 6 (D.C. Cir. 2006)). In *Alpharma*, 460 F.3d 1, this court did consider whether the agency's after-the-fact explanation originated from a "proper decisionmaker," *id*. at 7 (alterations and internal quotation marks omitted). But the agency had provided an "amplified articulation" of its prior "conclusory" statement in an effort to "compl[y] with the terms of [the court's] remand" for "further explanation." *Id*. at 5–6. Here, the two controlling Commissioners did not proffer an initial explanation in the administrative record that could be later "amplified" by the Dickerson/Cooksey statement. Nor was their non-contemporaneous statement a response to a judicial order for further explanation; the Commission has failed to enter an appearance at any stage of this litigation. This court has made clear that the "limited exception" permitting an agency to supplement its initial explanation "may not be employed to offer post-hoc rationalizations where no rationalization exists." *AT & T Info. Sys., Inc. v. Gen. Servs. Admin*., 810 F.2d 1233, 1236 (D.C. Cir. 1987) (citing *Camp v. Pitts*, 411 U.S. 138, 142–143 (1973); *Overton Park*, 401 U.S. at 420)).

The Court in *Regents* held the statement of the agency head was an "impermissible *post hoc* rationalization" on a matter that no one disputed fell within her discretion to decide. *Regents*, 140 S. Ct. at 1909. As the Chief Justice explained:

> [W]e refer to this as a prohibition on *post hoc* rationalizations, not advocate rationalizations,

> because the problem is the timing, not the speaker. The functional reasons for requiring contemporaneous explanations apply with equal force regardless whether *post hoc* justifications are raised in court by those appearing on behalf of the agency or by agency officials themselves.

*Id*.

Furthermore, the reasoning in *Regents* undercuts Amicus's fallback position that reversing the district court's judgment would be "pointless" because Dickerson and Cooksey's prosecutorial discretion reason would prevail on remand. Amicus Br. 20, 40. Observing that "[p]rocedural requirements can often seem such," the Court rejected that as a reason to disregard the *post hoc* prohibition because its observance "serve[d] important values of administrative law." *Regents*, 140 S. Ct. at 1909. "Considering only contemporaneous explanations for agency action," the Court explained, "promotes 'agency accountability' by ensuring that parties and the public can respond fully and in a timely manner to an agency's exercise of authority"; it "also instills confidence that the reasons given are not simply 'convenient litigating positions'"; and it advances "the orderly functioning of the process of review." *Id*. (alteration omitted) (quoting *Bowen v. Am. Hosp. Ass'n*, 476 U.S. 610, 643 (1986); *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012); *Chenery*, 318 U.S. at 94).

No less are "important values of administrative law," *id*., reflected in the Federal Election Campaign Act's "statutory policies," *Common Cause,* 842 F.2d at 449, and they counsel that when the Commission dismisses a complaint as an exercise of prosecutorial discretion, it timely say so. The Commission's failure to provide a contemporaneous explanation for its dismissal of ECU's administrative complaint hindered

"meaningful judicial review," *id.*, because the presumptive subject of judicial review emerged only after ECU filed this lawsuit and so forced ECU to "chase a moving target," *Regents*, 140 S. Ct. at 1909; *see Akins*, 524 U.S. at 25–26; 52 U.S.C. § 30109(a)(8). Amicus does not suggest that the non-contemporaneous statement "contributes to reasoned decisionmaking" by the Commission or provides "an opportunity for self-correction" in any meaningful sense. *Common Cause*, 842 F.2d at 449; *see also Orloski*, 795 F.2d at 161; *Regents*, 140 S. Ct. at 1909. It hardly "instills confidence that the reasons given are not simply convenient litigating positions" for the Commission to withhold the basis of its decision unless and until a lawsuit is filed and thereafter invoke prosecutorial discretion when its silence is challenged. *Id.* (internal quotation marks omitted); *see Dep't of Com. v. New York*, 139 S. Ct. 2551, 2575–76 (2019). Amicus has not pointed to a single case in which the court has sustained over the complainant's challenge a statement of reasons belatedly filed in derogation of *Common Cause*'s principles. Amicus Br. at 23–24. So proceeding not only cuts off "agency accountability" by keeping the complainant and interested members of the public in the dark, *Regents*, 140 S. Ct. at 1909 (quoting *Bowen*, 476 U.S. at 643), it also tends to diminish "predictability . . . for future litigants," *Common Cause*, 842 F.2d at 449. The district court summarily dismissed these considerations, apparently understanding the *Common Cause* line of authority to require the Commission to offer a contemporaneous explanation of its decision only for some deadlock dismissals. *End Citizens United*, 2022 WL 1136062, at *2–3. None of the cited cases, *id.* at *3, sanction selective compliance.

The Supreme Court determined that remand was appropriate in *Regents* notwithstanding the agency's representation that there was "no basis for concluding that [its]

position might change," Reply Br. for Pet'rs, 2019 WL 5589031, at *7, and that the matter would be considered by the "same agency personnel" on remand, *Regents*, 140 S. Ct. at 1934 (Kavanaugh, J., dissenting). Here the Commission has not defended its decision in court, much less the reasoning in the Dickerson/Cooksey statement. Moreover, the Commission's composition has apparently changed since its dismissal of ECU's administrative complaint, so that different "agency personnel" would consider the matter on remand. Oral Arg. Recording 14:30-15:25 (Mar. 10, 2023, Appellant's Counsel). In any event, the Supreme Court has contemplated that "a reviewing court . . . will set aside" Commission action taken contrary to law and "remand the case," even though the Commission might later "reach the same result exercising its discretionary powers lawfully." *Akins*, 524 U.S. at 25 (citing *Chenery*, 318 U.S. 80).

Accordingly, the court reverses the district court's judgment and remands the case with instructions to remand to the Commission for further action.